Johnny Lee **BILLIE** and Daniel Clark **Billy**, Appellants,

v.

The **STATE** of Texas, Appellee.

Nos. 58146, 58147.

Court of Criminal Appeals of Texas, En Banc.

April 30, 1980.

As Modified on Denial of Rehearing Oct. 1, 1980.

Peter A. Lesser (on appeal only), Dallas, for Billie.

John C. Hendrik (court appointed), Dallas, for Billy.

Henry M. Wade, Dist. Atty., Fred C. McDaniel, Robert E. Whaley, and Dan P. Garrigan, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

CLINTON, Judge.

These appeals follow convictions for the offense of aggravated rape wherein the jury assessed punishment for both appellants at thirty years confinement.

At the outset, we must address appellants' contentions that the trial court erred in failing to grant their requests for a transcription of the court reporter's notes of their first trial which ended in a hung jury. We conclude, for reasons about to be stated, that under the Supreme Court's holding of *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), each appellant was entitled to a transcription of the court reporter's notes of their first trial. Accordingly, the judgment will be reversed.

Each appellant was indicted for the offense of aggravated rape pursuant to V.T.C.A., Penal Code, § 21.03 on February 1, 1977. As a result of appellants' indigency, counsel was appointed on February 7, 1977. Appellants entered pleas of not guilty to the instant offense and were tried upon said pleas on May 23–26, 1977. After deliberating for over eight hours over a two–day period, the jury reported that it was hopelessly deadlocked on the issue of appellants' guilt or innocence and the trial court granted appellants' motion for mistrial in the afternoon of May 26, 1977.

On June 6, 1977, appellant Billie [1] filed a motion requesting a transcription of the court reporter's notes of his first trial on the grounds that he needed the transcription of the court reporter's notes both as a discovery device in preparing for his second trial and as a tool at the trial itself for the possible impeachment of the State's wit-

---

1. We note that although appellants are first cousins, they spell their respective surnames differently Daniel with a "y" and Johnny with an "ie".

nesses. Appellant Billie further stated in his motion that he was unable to purchase a transcription of the court reporter's notes, reaffirming his pauper's status sworn to by an affidavit dated May 26, 1977 yet maintaining that if in fact he had the requisite funds, he would purchase such a transcription. The trial court denied Billie's request that same day.

Appellant Billy, represented by different counsel, joined in his co–defendant's request for a copy of a transcription of the court reporter's notes of their initial trial August 3, 1977.[2] Appellant Billy's request was similarly denied by the trial court the same day.

Appellants' second trial on the merits began on August 22, 1977, consumed some five days, and the jury returned verdicts of guilty and assessment of punishment already stated above.

Succinctly stated, the evidence adduced below tended to show that appellants met the prosecutrix on the evening of December 25, 1976 in the company of her common law husband, and her sister–in–law (who had been dating appellant Billy). After the group had visited several bars in East Dallas, complainant's husband passed out or fell asleep and was placed in his automobile. At this juncture, complainant accompanied both appellants to their automobile where complainant testified, Billy produced a knife and proceeded, under threat of death, to have intercourse with her. They then drove to White Rock Lake where each appellant again had intercourse with her, she says, without her effective consent. Appellants concede the acts of intercourse were in fact consummated, but, they say, only after complainant consented to them.

The record reflects that counsel for Billie attempted to impeach the complainant during cross–examination, through the use of his own notes taken during the initial trial. After the prosecutor objected to this form of impeachment, the trial court held a hearing outside the presence of the jury where counsel for appellant Billie renewed his re-

quest for a transcription of the court reporter's notes of the mistrial, after first requesting that the court reporter who transcribed the events of the first trial be ordered to produce her notes of the mistrial so that the complainant's previous answers could be placed before the jury. The trial court overruled both requests.

It was not until further cross–examination of the prosecutrix that a stipulation was entered into between the State and appellant which provided as follows:

"[T]he State of Texas, Defendants Johnny Billie and Daniel Billy hereby stipulate that if Ann Meredith [the court reporter at the mistrial] were present to testify at this trial she would testify as follows: She was the court reporter at the prior hearing of this case, May 23rd through 26th, 1977. D____M____, the complainant, testified under oath as to the following. One, she thought that Johnny Billie put the knife to her throat in the parking lot. Two, she was raped four times, twice by each Defendant. Three, she could not remember if there was a knife in the Defendant's hand in the back seat of the car and Investigator T. M. Holmes testified at the prior hearing of this case."

On direct examination at the second trial, the prosecutrix testified that Daniel Billy was the individual who in fact held the knife to her throat and that she was raped three times, and not four as she had noted at the first trial. The third inconsistency in complainant's testimony at the second trial was that unlike her recollection at the first trial, she recalled that Daniel Billy had a knife in his hand while they were in the backseat of the automobile. The thrust of appellants' contention is that, while these three inconsistencies were in fact stipulated to by the State, without a transcription of the court reporter's notes from the initial trial, there was no viable way of knowing *just how many more* inconsistencies existed for impeachment purposes. We agree.

In *Britt v. North Carolina*, supra, the Supreme Court reaffirmed its holding in

---

2. The record below does not reflect why appellant Billy did not join in his co–defendant's

request for the transcription of the court reporter's notes on June 6, 1977.

*Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and its progeny:

"[A]s a matter of equal protection, [the State] must provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. . . . [T]here can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal."

404 U.S. at 227, 92 S.Ct. at 433.

In support of its position that appellants "were not harmed in any way" by the trial court's denial of their request for the court reporter's notes of the mistrial, the State pointedly refers us to *Austin v. State*, 451 S.W.2d 491 (Tex.Cr.App.1970) and *Perbetsky v. State*, 429 S.W.2d 471 (Tex.Cr.App. 1968),[3] contending that appellants "made no showing of any particularized need for any or all of the transcript" from their initial trial. Yet in *Britt* the Supreme Court *expressly rejected* the contention the State seeks to advance here, noting that:

Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, *without requiring a showing of need tailored to the facts of the particular case.*"[4]

404 U.S. at 228, 92 S.Ct. at 434.

The State points to the fact that it stipulated to the inconsistencies alluded to above

as proof that appellants' counsel was able to go over complainant's prior testimony in considerable detail with the court reporter and that such was a viable alternative to a full–blown transcription of the court reporter's notes. We do not agree. Again, the Supreme Court observed in *Britt*:

"We have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial. *Moreover, we doubt that it would suffice to provide the defendant with limited access to the court reporter during the course of the second trial.* That approach was aptly rejected as 'too little and too late' in *United States ex rel. Wilson v. McMann*, 408 F.2d 896, 897 (2nd Cir. 1969) . . . *A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight.*"

404 U.S. at 229–230, 92 S.Ct. at 434–435.

The record below evidences the fact that appellant Billie's initial request for a transcription of the court reporter's notes from the mistrial was made on June 6, 1977, approximately ten days after the mistrial and almost three months before the retrial. Those cases in this Court construing *Britt*[5] focus on the need for such a request to be

---

3. Though appellants' briefs quote extensively from the Supreme Court's opinion in *Britt*, we note that the State has not seen fit to either mention or in any way distinguish *Britt*, choosing instead to rely upon cases decided *prior* to the Supreme Court's pronouncement in *Britt*.

4. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

5. In *Shaw v. State*, 479 S.W.2d 918 (Tex.Cr. App.1971), the Court noted that under the facts presented, appellant was not entitled to a free transcript of the testimony adduced at the examining trial though appellant's conviction was reversed on other grounds. *Johnson v. State*, 504 S.W.2d 493 (Tex.Cr.App.1974), the first case of sufficient magnitude before this Court after *Britt*, rejected appellant's request for a copy of his mistrial transcript on the grounds that no ruling was ever obtained on appellant's

motion initially and that a subsequent request was made and overruled on the day of trial. Because of the disposition of *Johnson* on independent and adequate procedural grounds, the Court did not reach the substantive issue posed by *Britt*. Similarly in *McCarter v. State*, 527 S.W.2d 296 (Tex.Cr.App.1975) and *Jackson v. State*, 536 S.W.2d 371 (Tex.Cr.App.1976), denial of the request for the transcriptions of the court reporter's notes rested on the grounds that appellant in each case had either failed to make a timely request for such a transcription or had otherwise failed to exercise due diligence in asserting his claimed right. Indeed, in *Jackson*, supra, the Court noted that the holding in *Britt* requires that as a matter of equal protection a state must provide an indigent defendant with a transcript of prior proceedings *when the transcript is needed for an effective defense or appeal.* However, because the facts of the case showed that the appellant in

made timely and pursued with due diligence. On the strength of this record, we are not hardpressed to distinguish those cases from the instant cause on the matters of timeliness and due diligence given appellants' timely and repeated requests for the transcription of the court reporter's mistrial notes.

In the case at bar we perceive no reason, given the means by which a transcription of the court reporter's notes from the first trial could have been readily furnished to appellants, for the continued opposition to granting such a request on appellants' behalf. Fundamental fairness requires that these indigent appellants be furnished a transcription of the court reporter's notes of their mistrial, a commodity which they surely would have purchased as a matter of course had they been financially able. Any other holding herein would not be consistent with the Supreme Court's dictum in *Griffin v. Illinois*, supra:

> "[T]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has."

351 U.S. at 19, 76 S.Ct. at 591.

Restated, our holding today is simply that appellants were, and upon a retrial are,

entitled to a copy of the transcription of the court reporter's notes from their initial trial and that the trial court's denial of their requests were, under the aegis of *Britt v. North Carolina* and our interpretation thereof, reversible error.[6]

■ Our disposition of these causes as detailed above does not require us to address appellant Billie's remaining contention that his request for a mistrial should have been granted on the grounds of prosecutorial misconduct.[7]

For the error pointed out, the judgments are reversed and remanded.

W. C. DAVIS, Judge, dissenting.

Using *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) as its sole authority, the majority reverses these aggravated rape convictions because the trial court refused to provide appellants with a free transcription of the testimony of their trial which ended in a hung jury. Appellants contended they needed the transcript for the purpose of impeaching the testimony of the prosecutrix by showing prior inconsistent statements.

---

*Jackson* suffered no harm in his appellate strategy, denial of his request was not error, 536 S.W.2d at 374.

**6.** The writer concurs in the view expressed by then Justice Douglas' dissent, in *Britt v. North Carolina*, supra, insofar as the latter's disapproval of the "alternative" of calling the court reporter to testify as to what a particular witness' answers were at a prior proceeding. As Justice Douglas opined:

> "[I]f you have caught the witness in a contradiction, it is the more clearly shown if the exact words previously used by the witness are brought to the jury's attention ... *Calling the reporter to read such prior testimony during the examination, however is rarely a practicable method of confronting the witness with such contradiction.* Even if the judge will permit the practice, the wisdom of its use is questionable. The jury and court may grow impatient, and the witness will have been afforded a considerable period of time to think about the matter and be prepared with an explanation or excuse."

404 U.S. at 241–242, 92 S.Ct. at 441, *quoting* R. Keeton, Trial Tactics and Methods 103 (1954) (Douglas, J., dissenting).

**7.** We note from a perusal of the briefs and the record that the conduct of the prosecutors in trying this case might very well in and of itself have mandated a reversal of these convictions notwithstanding our disposition of appellants' first ground of error. There is no place in our adversary system of justice for personal attacks by prosecutors upon defense counsel or similar attacks upon defendants "over the shoulders of his counsel." Cf. *Crutcher v. State*, 481 S.W.2d 113 (Tex.Cr.App.1972). However, the primary responsibility for ensuring that attacks of this nature are not condoned or otherwise permitted rests not with this Court, but with the trial court. In this connection we observe the lamentation of the trial court outside the presence of the jury after one particular stressful episode:

> "... I just can't make gentlemen out of either one of you and I can't keep you from making sidebar comments, I can't keep you from making ignorant and stupid objections. I can't do anything. There's nothing I can do about it."

Cf. *Rivera v. State*, 161 Tex.Cr.R. 438, 278 S.W.2d 164 (1955).

A review of the facts of this case makes it clear that the result reached by the majority is not mandated by *Britt*, supra. To the contrary, the majority opinion in effect holds that a transcript of the testimony at a mistrial is always needed for an indigent defendant's defense and consequently must always be furnished free upon request, thereby completely ignoring the principle of law upon which the conviction in *Britt* was affirmed by the Supreme Court of the United States.

Appellants' first trial ended May 26, 1977. On June 6, 1977, a motion was filed requesting the transcription of the court reporter's notes. The second trial, with the same attorneys representing each appellant, began on August 22, 1977, slightly less than three months from the end of the first trial. During cross examination of the prosecutrix, appellants' counsel sought to impeach her by showing discrepancies in her testimony between the first and second trial regarding the number of times she was raped and which appellant held the knife on her. Subsequently, appellants' counsel were allowed to read to the jury a stipulation of evidence by the court reporter at appellants' first trial concerning the prosecutrix's testimony as to who held the knife on her during the rapes and the number of times she was raped.

In deciding the question of whether the state court properly determined that the transcript requested was not needed for an effective defense, the Supreme Court, in *Britt*, supra, identified two factors relevant to the determination of need:

"(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and

(2) the availability of alternative devices that would fulfill the same functions as a transcript."

In *Britt*, it was concluded that the defendant did have an alternative that would have been substantially equivalent to a transcript:

"At oral argument in this case, however, it emerged that petitioner could have obtained from the court reporter far more assistance than that available to the ordinary defendant, or to the defendant in Wilson. (Citing *Wilson v. McMann*, 2 Cir., 408 F.2d 896). The trials of this case took place in a small town where, according to petitioner's counsel, the court reporter was a good friend of all the local lawyers and was reporting the second trial. It appears that the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request."

A look at the alternatives available to the appellants in this case convinces me that the same result as reached in *Britt* should also be made here.

First, although there is no showing in the record how well known to appellants' counsel the court reporter who reported the first trial was, the record does reflect that she was known to them by name. Further, the stipulation obtained by appellants' counsel, is to what Ann Meredith, the court reporter at the mistrial, would testify to, thereby showing that appellants' counsel had obtained and/or gone over the victim's testimony at the first trial with the court reporter in enough detail to be able to obtain these discrepancies.[1] Appellants' only request for the court reporter's appearance was made during the trial, which was prop-

---

1. "The State of Texas, Defendants Johnny Billie and Daniel Billy hereby stipulate that if Ann Meredith were present to testify at this trial, she would testify as follows:

She was the Court Reporter at the prior hearing of this case, May 23–26, 1977.

A. D_____ M_____, the Complainant testified under oath to the following:

1) She thought that Johnny Billie put the knife to her throat in the parking lot.

2) She was raped four times, twice by each Defendant.

3) She could not remember if there was a knife in the Defendant's hand in the back seat of the car.

B. Investigator T. M. Holmes testified at the prior hearing of this case."

erly refused by the trial court. However, the fact that they were able to stipulate what she would testify to shows that they had been in contact with her prior to the second trial.

Secondly, in the instant case, appellants were represented at both trials by the same attorneys. Appellant Billie's counsel stated that he had recorded at least part of the first trial, which had ended less than three months earlier.[2] In *Britt*, supra, the Supreme Court again rejected the suggestion that "in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial," and cited *Eskridge v. Washington State Bd. of Prison Terms and Paroles*, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) for the proposition that "While trial notes might well provide an adequate substitute for a transcript, *the failure to make such notes* does not bar an indigent prisoner from claiming the right to a free transcript." (Emphasis added) In answering the argument of the prosecution that the defendant might have utilized notes compiled by someone other than the official court reporter, the Supreme Court wrote 357 U.S. at page 215, 78 S.Ct. at page 1062, 2 L.Ed.2d at page 1271:

> "Assuming that under some circumstances such notes could be an adequate substitute for a court reporter's transcript there is nothing in this record to show that any were available to petitioner, and the Washington courts appear to have proceeded on the assumption that he could not effectively prosecute his appeal unless the motion for a free transcript was granted."

In the present case, there is evidence that at least one of the attorneys for the appellants made and used recorded notes for the purpose of cross examination.

The holding of the majority far exceeds that of the United States Supreme Court. In every case of mistrial, the trial court will be compelled to furnish the indigent defendant a free transcript. Even though there is a stipulation as to what the court reporter's notes would show, the majority would hold that inadequate since "there is no viable way of knowing just how many more inconsistencies existed for impeachment purposes."

In this case, where the trials were less than three months apart, where the same lawyers represented appellants at both trials, where the counsel for at least one appellant kept notes of the first trial, where there is a stipulation of the claimed inconsistencies read to the jury, and where the attorneys were acquainted with the court reporter who reported the first trial, it would appear to me that there were more alternatives available than were held sufficient in *Britt*, supra.

As to the concept of "fundamental fairness" cited by the majority requiring the furnishing of a free transcript to these appellants, this does not comport with the holding of the United States Supreme Court in *Eskridge*, supra:

> "We do not hold that a State must furnish a transcript in every case involving an indigent defendant."

Nor has there been a single case decided by this Court before or after *Britt* requiring the furnishing of a free transcript for impeachment purposes in spite of the lofty ideal that "there can be no equal justice where the kind of trial a man gets depends on the amount of money he has."

And finally, it is noted that regardless of who held the knife on the victim in this case, and how many times she was raped, the evidence showed conclusively that both appellants participated in raping her and

**2.** "Q. (By Mr. Lesser, Defense Counsel) .... did you say at the trial the last time you testified to this on the 24th day of May, 1977, that on a question from Mr. Whaley that you thought Johnny was the individual that put the knife to your throat?

MR. WHALEY (Prosecutor): Judge, even that's an improper question. He's got to ask the question, then give the answer to set it up for impeachment.
MR. LESSER (Defense Counsel): Mr. Whaley, I recorded your question, I recorded her answer ..."

that their only defense was consent, which was rejected by the jury.

I dissent.

DOUGLAS, J., joins in the dissent.

## ON STATE'S MOTION FOR REHEARING OPINION MODIFIED AND MOTION OVERRULED

DALLY, Judge.

 After further consideration we are of the opinion that our holding on original submission is too broad. We said:

> "Restated, our holding today is simply that the appellants were, and upon retrial are, entitled to the transcription of the court reporter's notes from their initial trial and that the trial court's denial of their requests were, under the aegis of *Britt v. North Carolina* and our interpretation thereof, reversible error."

That holding is modified to make it clear that an indigent defendant need only be furnished without cost for use in a subsequent trial a transcription of the testimony of the State's witnesses, since it is usually only that testimony that could be used for discovery and impeachment. A transcription of the testimony of defense witnesses, jury voir dire, argument of counsel, and portions of the record other than the transcription of the testimony of the State's witnesses need only be furnished an indigent defendant for use in a subsequent trial without cost if a particular need is shown.

The opinion on original submission is modified and the State's Motion for Rehearing is overruled.