David Glen GRAHAM, Appellant,

v.

The STATE of Texas, State.

No. 2–81–016–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 18, 1981.

Jake Cook, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and J. Michael Worley, Asst. Dist. Atty., Fort Worth, for the State.

Before HUGHES, RICHARD L. BROWN and JORDAN, JJ.

## OPINION

JORDAN, Justice.

Appellant was tried and convicted by a jury for the murder of one Sarah Whitehead. Trial was held to a jury on September 18 and 19, 1978. Punishment was set by the jury at 99 years in the Texas Department of Corrections. This was the second trial of appellant on this charge, the first trial having resulted in a mistrial on July 20, 1978 because the jury could not agree on a verdict.

Appellant, by seven grounds of error, contends that the trial court committed reversible error which resulted in an unfair trial and that his conviction and sentence should be reversed.

We agree and sustain appellant's first and fourth grounds of error.

Appellant, from August of 1977 until January 22, 1978, dated Sandy Whitehead, the fifteen year old daughter of the murder victim, Sarah Whitehead. Sometime in late January of 1978, according to the evidence in this record, appellant "dropped" Sandy for another girl, and Sandy, angry and rejected, reported appellant, his brother and two others to the Fort Worth Police for the robbery of a fast food place in Fort Worth. Sandy learned of this robbery, which had occurred early in 1978 or late in 1977, from appellant, who confided in her while he was "going with her."

Appellant was arrested, along with his brother and the other two participants in the fast food robbery, in late January, 1978. In February he pled guilty to the charge and received a four year probated sentence.

Sandy Whitehead testified that from February until April 14, 1978, both she and her mother received threatening phone calls from appellant in which he promised to "blow Sandy's head off." Sandy testified that both she and her mother were very much afraid of appellant. In the early afternoon of April 14, 1978, while Sandy and her mother were alone at their home on Northwest 21st St., Fort Worth, Texas, Sandy saw a man get out of a green Chevrolet pickup truck in front of their residence, and enter the house without knocking. Sandy recognized appellant's voice although she did not actually see him, and ran into her bedroom, hiding in the closet. Sandy testified that appellant asked Sarah Whitehead "where is Sandy" and "just where is she." Sandy, shortly after hearing appellant's voice demanding to know where she was, heard a gunshot and heard her mother fall to the floor. Immediately after this she heard another gunshot which ripped through the door of her room, pass-

ing about two feet from her, and hitting a wall in her room. Appellant was seen running from the Whitehead residence immediately after the shooting by two men who lived in the area and who knew and recognized him. Appellant was arrested early the next morning in a motel and was charged with the murder of Sarah Whitehead. The evidence was that she died from a shotgun wound of the head.

Appellant's first ground of error is that the trial court erred by commenting on what he thought the evidence would show, in violation of V.A.C.C.P. art. 38.05, and that by expressing his opinion on the evidence the court unduly influenced the jury. Appellant denied that he shot Sarah Whitehead and relied on the defense of alibi. He simply testified that he was nowhere near the Whitehead residence on the afternoon of April 14, 1978.

Before considering the remarks of the trial judge and any possible effect it could have had on the jury in this case, it must be remembered that this was the second trial of the case before the same judge. The first trial preceded the second by only approximately two months.

In his preliminary remarks to the jury panel, before the voir dire examination by counsel, the trial judge asked the jury panel if any one knew Sarah Whitehead during her lifetime and then said "I think the evidence will show that he—this Defendant, the evidence will probably show, that he knew Sarah Whitehead—". At this time counsel for appellant objected "to the Court telling the Jury what the Court expects the State to prove which amounts to an opening statement." This objection was overruled by the Court, who went on to say "*I think that the evidence will show that he went to her house looking for her daughter and the State's evidence will probably show that Sarah Whitehead was killed somewhere during that time . . . . I further think that Sarah Whitehead's daughter had been a witness against this Defendant —.*" At this juncture Mr. Cook, appellant's counsel asked "May we have a continuing objection to this?" The Court then finished the sen-

tence "—in another case—no." The Court by saying "no" denied counsel's continuing objection. Mr. Cook then replied "Note our exception."

■ The State argues that appellant's objection was insufficient to preserve error. We hold, however, that the objection, under the circumstances, was sufficient and that the error was not waived.

■ During the trial Sandy Whitehead testified that she knew appellant was at her house on the afternoon of April 14, 1978 because, although she didn't actually see him clearly enough to identify, she recognized his voice. She was familiar with his voice because she had gone out with him over a period of several months. Also, as indicated above, two neighbors saw appellant running away from the Whitehead residence immediately after the shooting. On the other hand, appellant denied that he was anywhere near the Whitehead house that afternoon. He testified that until about 1:55 P.M. on April 14, 1978, he was at a pawn shop exchanging a handgun he had bought earlier for a shotgun. He also testified that upon leaving the pawn shop he went to the Trinity River to try out his new shotgun. The owner of the pawn shop verified to some extent appellant's testimony, by testifying that he thought he went to lunch at his usual time that day, about 1:30 P.M., and that when he got back from lunch appellant was waiting for him to exchange the handgun which he had purchased earlier.

With the issue of whether appellant was present at the Whitehead residence on the fatal day clearly and closely drawn, we must determine whether the remarks of the trial judge at the voir dire stage of this trial were erroneous and calculated to prejudice appellant's defense. The prime question to be decided by the jury here was whether in fact appellant shot Sarah Whitehead at the Whitehead house in the early afternoon of April 14, 1978. This issue was hotly disputed; there was evidence both ways and the question was for the jury to decide. With this in mind, we go back to the remarks of the court to the jury panel before the com-

mencement of this trial. "*I think that the evidence will show that he went to her house looking for her daughter and the State's evidence will probably show that Sarah Whitehead was killed somewhere during that time . . . .*"

We think beyond question that the statements of the Court constituted improper comments on the weight of the evidence and that they gave credence to the State's version of the disputed facts by indicating to the jury that appellant was in fact present at the time and place in question. V.A.C.C.P. art. 38.05 provides that:

"In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case."

We hold that these remarks, though inadvertently made with the best intentions, were calculated to, and probably did, convey to the jury the Court's opinion of this case on a pivotal issue. *Hay v. State,* 472 S.W.2d 157 (Tex.Cr.App.1971); *Ward v. State,* 156 Tex.Cr.App. 472, 243 S.W.2d 695 (1951); *Price v. State,* 366 S.W.2d 938 (Tex. Cr.App.1963); *Wood v. State,* 160 Tex.Cr. App. 535, 272 S.W.2d 730 (1954); *Kincade v. State,* 552 S.W.2d 832 (Tex.Cr.App.1977). Appellant's first ground of error is sustained.

In his fourth ground of error appellant asserts error on the part of the trial court in denying the defense request for a transcript of the first trial testimony. Appellant was an indigent and was represented at both trials by court appointed attorneys. Appellant's first trial ended in a mistrial on July 20, 1978. On August 4, 1978, well in advance of the date set for the second trial, appellant filed his motion for production of the trial transcript of the first trial so that he could effectively cross-examine and impeach witnesses, discover inconsistent statements, and test the credibility of and recollection of witnesses. This motion was overruled by the court on August 4, the day it was filed, and the second trial started on September 18, 1978. Throughout the trial, on a considerable number of occasions, appellant's counsel tried to impeach several of the State's witnesses from his memory of what transpired at the first trial. On many of these occasions State's counsel would object to appellant's efforts to impeach with the comment "We would object. If he has a specific statement, he can use a specific statement." These objections were sustained by the trial court. Appellant's efforts to cross-examine Sandy Whitehead, the State's chief witness and Ricardo Alviar, another important witness for the State, were all met with similar objections from the State, with the comment that "if he has a specific statement, he can use a specific statement."

At one point, during appellant's cross-examination of the witness Alviar, when an objection to his attempt to impeach the witness by use of counsel's memory from the first trial was sustained, appellant, out of the presence of the jury, re-urged his motion for production of the trial transcript of the first trial. The motion was also overruled.

Appellant contends that because of the denial by the trial court of the trial transcript of the first trial, he was unable to effectively cross-examine and impeach the State's witness, as a result of which appellant was denied effective assistance of counsel guaranteed him by the 6th Amendment of the United States Constitution. We agree.

In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the United States Supreme Court established the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. As a result of *Griffin* and later Supreme Court cases following it, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective

defense or appeal. This principle of law was followed in *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) although it was held that under the facts of that particular case, which revealed a somewhat unique situation, that it was not error for the State Court to deny the indigent defendant a free transcript of his first trial. In *Britt* it was said "A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight...."

The right of the indigent defendant to a free transcript of prior proceedings is also upheld in *Billie v. State*, 605 S.W.2d 558 (Tex.Cr.App.1980), *Armour v. State*, 606 S.W.2d 891 (Tex.Cr.App.1980), and *Cook v. State*, 611 S.W.2d 83 (Tex.Cr.App.1981). In the latter case it was held that the denial of a free transcript there was not error because the request was not timely made. *Billie, supra*, held that it was reversible error, under *Griffin, supra* and *Britt, supra*, for the trial court to deny the indigent appellant a free transcript of the first trial. In *Billie*, a case very similar on its facts to ours, appellant made his initial request for the transcript of the first trial ten days after the mistrial was declared and almost three months before retrial, and repeated such request during trial. The Texas Court of Criminal Appeals held that the request was timely and should have been granted. We hold the same in this case.

We are constrained to follow the holding of the Supreme Court in *Griffin v. Illinois, supra, Britt v. North Carolina, supra*, and other cases, as well as the holding of our Court of Criminal Appeals in *Billie v. State, supra, Armour v. State, supra*, and *Cook v. State, supra*. Accordingly, appellant's fourth ground of error is sustained.

The judgment of the trial court is reversed and the cause remanded for another trial.