Alfredo MOYA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–86–577–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1987.

Alfredo Jimenez, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Côrpûs Christi, for appellee.

Before NYE, C.J., and KENNEDY, and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

Appellant was convicted of robbery. Punishment was assessed at 30 years in the Texas Department of Corrections. We affirm.

In his first point of error, appellant contends that the trial court erred in overruling his motion to suppress evidence that was obtained as the result of a warrantless search and seizure. His complaint is that police officers lacked probable cause to make the search and arrest. The facts concerning the commission of the offense and appellant's arrest are as follows.

Alta Danker was walking out of Bat's Pub late one night when someone approached her, grabbed her purse, pushed her to the ground, and fled with her purse. Danker returned to the pub and police were summoned. Officer Joe Barrerra arrived shortly thereafter and interviewed Danker. In addition, Barrerra interviewed Mary Samuels, who had arrived at Bat's just after Danker was robbed. She told Barrerra about a man who had run across traffic in front of her car as she approached Bat's, and she felt it might have been the same person who robbed Danker.

Barrerra testified that he broadcast a description of the robber. The description was a Hispanic male in his twenties, five-foot-eight to five-foot-ten, fairly heavy set, a hundred and seventy pounds, black hair, dark eyes, white T-shirt with blue jeans, and a small trimmed mustache. The stolen purse was described as being tan and greyish, and made of leather and vinyl. Based on his interview of Mary Samuels, Barrerra also broadcast that a light blue or light green car was possibly involved.

Officer Anna Escalante was on patrol in the area where the robbery occurred searching for the suspect shortly after the robbery. She noticed a vehicle parked in a church parking lot. As she passed the vehicle, she noticed its lights go out. She decided to turn her vehicle around and investigate. As she approached the parked car, she noticed two persons inside. The one on the passenger's side appeared to be passed out. The driver got out of the car as she arrived and opened the hood. He said he was having mechanical problems and asked for her assistance. Escalante looked at the driver and he fit the description of the robbery suspect. Escalante looked in the car and saw part of a purse on the floor sticking out from under the driver's seat. The purse matched the description broadcast.

When back-up units arrived, appellant was handcuffed and taken to Bat's Pub where Danker identified him as the robber. The purse in appellant's car contained Danker's checkbook. Danker identified the purse as being hers.

Appellant contends that Officer Escalante had no specific knowledge connecting appellant to the robbery. He contends the police had only a general description of the suspect and that the facts and circumstances within the knowledge of the arresting officers could have amounted to no more than suspicion or a hunch. Appellant's sole case authority is *Brown v. State*, 481 S.W.2d 106 (Tex.Crim.App.1972).

In *Brown*, a police officer stopped a vehicle containing four men, three of whom "fit the general description" of persons who had committed an armed robbery on the previous day. The description which had been given of the three hold-up men consisted only of a designation as to race and an approximation as to height and weight. The Court of Criminal Appeals held that the officer lacked probable cause to search, arrest, or investigate the defendants because the description of the robbers contained no identifiable characteristics which would serve to distinguish them from the general population.

■ The present case is distinguishable from *Brown*. Appellant was discovered shortly after the offense in an area close to where the robbery had just occurred. Appellant was found in a light blue Cutlass.

The investigating officer had information that a light blue or light green car was possibly involved in the offense. In addition, the arresting officer testified that appellant fit the description broadcast. That description was more detailed than that in *Brown*. Moreover, the record shows that appellant was not detained until after Officer Escalante viewed the purse, which matched the description given by Danker.

In *Mabry v. State*, 492 S.W.2d 951 (Tex. Crim.App.1973), police were found to have probable cause to stop and arrest a suspect matching a broadcast about two black suspects in a green 1965 Chevrolet with Florida plates. In *Hooper v. State*, 516 S.W.2d 941 (Tex.Crim.App.1975), sufficient probable cause was found for a stop and arrest based on a broadcast that the suspect was a black man about six feet tall, weighing between 170–180 pounds, wearing a dark-colored coat or jacket.

The description broadcast by Officer Barrerra was at least as specific as those in *Mabry* and *Hooper*. In addition, the temporal and spacial proximities of the robbery and discovery of appellant favor upholding the police action.

Appellant, both at trial and on appeal, argues that the search and arrest were illegal because Officer Escalante (and other officers) had difficulty in the pretrial hearing remembering specifics of Officer Barrerra's broadcast. At the hearing, Escalante could remember little more than that she was looking for a man wearing a T-shirt. However, Escalante distinctly testified that on the night of the robbery she knew the description broadcast, and she knew that appellant matched that description. As the trier of fact at the suppression hearing, the judge may have believed that her inability to describe the person she was looking for was the result of the time between the arrest and the hearing, rather than the result of ignorance on the night of the arrest.

The trial court did not err in overruling appellant's motion to suppress. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in denying his request to be furnished with a transcript of the pretrial suppression hearing before trial. The court denied the request, noting that the pretrial hearing had concluded on Friday afternoon, that trial was set for Monday, that a jury had already been selected, that appellant had asked for a speedy trial, and that it was "not humanly and earthly possible to have a statement of facts prepared on this hearing by Monday."

Appellant relies on *Billie v. State*, 605 S.W.2d 558 (Tex.Crim.App.1980), where it was held that, upon timely request, an indigent defendant must be furnished a statement of facts of a previous trial which ended in a hung jury. *Billie*, in turn, relies on *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), wherein the Supreme Court held that the equal protection clause requires the State to produce a transcript of a prior proceeding when the transcript is needed for an effective defense or appeal. As noted in *Billie*, the defendant is not required to show a need for the transcript, nor is he required to "bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight."

An indigent defendant's right to have the prior proceedings transcribed is not absolute, however. The request must be made timely and pursued with due diligence. *Billie v. State*, 605 S.W.2d at 561–562. No Texas case has addressed when the request for a pre-trial suppression hearing must be made, or what diligence is required.

In Oklahoma, the request must be made "far enough in advance of trial to give the State a reasonable amount of time to transcribe the minutes and avoid the necessity of suspending trial pending production of the transcript." *Roberts v. State*, 634 P.2d 729 (Okla.Crim.App.1981).

In Georgia, daily transcripts are not required when requested, although the trial court should consider the request as to the testimony of any particular witness. *Chenault v. State*, 234 Ga. 216, 215 S.E.2d 223 (1975).

In the present case, the preliminary hearing lasted two days and ultimately was reported in 266 pages of transcript. Appellant requested the transcription after a jury had been selected and trial scheduled for the following Monday.

Most of the State's case in the suppression hearing was presented on Wednesday, December 10, yet no request was made for the suppression transcript until the conclusion of the appellant's case on December 12.

On Monday, December 15, appellant announced ready for trial. He did not renew his request to be furnished with a transcript of the suppression hearing, either complete or partial. Appellant did not move for a continuance.

█ Under the above facts, appellant's request for a transcription would have interfered with the trial setting. Furthermore, he did not pursue his rights by requesting the transcription of only those witnesses' testimony which he might "need" for an effective defense, and he announced ready for trial. Under these facts, we hold that the trial court did not commit reversible error in denying appellant's motion. Appellant's second point of error is overruled.

The judgment of the trial court is AFFIRMED.