NO. 07-08-0295-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 29, 2009
_____

LUDWING D. CANALES,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,494; HON. CECIL G. PURYEAR, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Ludwing D. Canales appeals his two convictions for aggravated assault with a deadly weapon. He contends, via three issues, that the trial court committed reversible error in failing to order that a transcription be prepared of testimony admitted prior to the granting of a mistrial and in failing to grant a continuance so that such a transcript could be prepared. We reverse the judgments.

*Background*

On August 20, 2006, a number of persons attended a party at a townhouse in Lubbock. Laura Cox and Jessica Vinson lived in the area. At some point, Kevin Baker and Austin Starns, who were attending the party, saw Cox in her driveway apparently arguing with appellant. Baker observed appellant swing a golf club at Cox and strike her. After that, both Baker and Starns approached appellant and attempted to take the golf club from him. Other persons from the party also appeared and attempted to stop appellant. This resulted in at least one more person being struck with the golf club. At some point, appellant returned to his nearby residence, retrieved two large knives, began swinging them at those present, and stabbed at least one person.

The State eventually indicted appellant on four counts of aggravated assault with a deadly weapon, and two of those four counts were set for trial. The two counts set for trial involved appellant's use of the golf club, as opposed to the knives, to strike others. During the first day of testimony, the State called five witnesses. After the culmination of the first day, one of the jurors suffered an injury and was unable to continue. Because appellant opted not to proceed solely with the remaining eleven jurors, the trial court declared a mistrial. By then, appellant had already moved for a continuance and a transcription of the first day's testimony. He argued that the transcription was needed for impeachment purposes during the new trial. The State said nothing in response, that is, it did not attempt to show that the transcription was unnecessary or otherwise of little import to the defense. Nor did it attempt to show that avenues other than the provision of a transcript were available to appellant to reach the same end.

2

The trial court summarily denied both motions, because it could not see how the testimony that had been received could be used for impeachment purposes and because it thought counsel should be able to recall what was said the previous day. A new jury then was empaneled, and it proceeded to hear testimony from the witnesses.

*Motions for Transcript and Continuance*

As previously mentioned, appellant attacks the trial court's decision to deny him both a continuance and a transcription of the prior testimony. We find this troublesome because an indigent defendant, such as appellant, has a constitutional right to a transcription of testimony received during a prior trial if there exists a need for it and no alternatives exist that fulfill the same function as if a transcript was available. *Britt v. North Carolina,* 404 U.S. 226, 227-28, 92 S.Ct. 431, 433-34, 30 L.Ed.2d 400, 403-04 (1971) (noting that the right arises from the Equal Protection Clause of the U.S. Constitution). Furthermore, our Court of Criminal Appeals acknowledged the existence of such a constitutional right in *White v. State*, 823 S.W.2d 296 (Tex. Crim. App. 1992), *Armour v. State*, 606 S.W.2d 891 (Tex. Crim. App. 1980), and *Billie v. State*, 605 S.W.2d 558 (Tex. Crim. App. 1980). More importantly, it held in *White* that the defendant's need for the transcript was and is presumed. *White v. State*, 823 S.W.2d at 298. Of course, the State may rebut the presumption, *id.* at 299 (imposing upon the State the burden to show lack of need); *Armour v. State*, 606 S.W.2d at 893 (holding the same), or show that acceptable alternatives exist in lieu of providing a transcript. *Britt v. North Carolina,* 404 U.S. at 230, 92 S.Ct. at 435

3

(noting that the defendant is not responsible for negating the existence of sufficient alternatives).[1]

From the record before us, we see that upon the declaration of a mistrial, appellant immediately sought a continuance and the transcript. Furthermore, the State offered neither proof nor argument to the trial court in effort to satisfy its burden under *Britt* and *Armour* or to sway that court into denying the motions.[2] Nor was effort made to show that adequate alternatives to the transcript existed. And, that the trial court believed appellant should have been able to simply recall the testimony from the previous day does not fill the void created by the missing transcript. *See Britt v. North Carolina,* 404 U.S. at 229, 92 S.Ct. at 434 (stating that counsel is not required to have a perfect memory). Nor does the fact that the amount of testimony involved encompassed only one day's worth of testimony alone relieve the trial court from complying with the constitutional mandate. *See White v. State,* 823 S.W.2d at 299-300 (finding reversible error in failing to grant a continuance for preparation of a transcript even though only two hours of testimony presented four days earlier was involved). Rather, it would seem that the quantum involved would have made it easier to comply with the constitutional mandate. Simply put, the less information needing transcription means the less time and potential disruption involved. Given these

---

[1]The State opts not to contend that adequate alternatives to the provision of a transcript existed here.

[2]The State argues in its brief that appellant had no need of a transcript because the two complainants had not yet testified at the time a mistrial was declared, and the witnesses who had testified only described events that occurred after the attack on the complainants. However, we note that one of the testifying witnesses stated that he observed appellant strike Cox with the golf club. There were also some conflicts between the witnesses and evidence that was relevant to appellant's defensive theory of self-defense.

4

circumstances, we cannot but hold that the trial court erred in denying appellant the requested transcript and the time to secure it.

*Harm*

Our having found error normally does not automatically entitle an appellant to a reversal. Instead, we must also assess whether the error caused harm. TEX. R. APP. P. 44.2(a); *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). Yet, that is not always true. For instance, if the error is structural in nature, whether it resulted in harm is immaterial. *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008); *Cain v. State*, 947 S.W.2d at 264. Similarly, the Texas Court of Criminal Appeals held, prior to *Cain*, that harm is presumed in situations like that before us. *White v. State*, 823 S.W.2d at 300. To date, the high court has yet to overrule *White*. *But see Cornish v. State*, No. 04-95-0631-CR, 1996 Tex. App. LEXIS 1836 at *7-9 (Tex. App.–San Antonio May 8,1996, no pet.) (not designated for publication) (applying a harm analysis in a similar situation). So, because *White* has not been overruled, we too presume that appellant was harmed by the trial court's decision to withhold from him a transcript of the prior trial. Indeed, it seems rather unreasonable to hold otherwise. This is so because the test used in assessing whether the trial court erred already has within it an element of harm. The particular element relates to the requirement that the defendant show a need for the transcript. If such a need exists, then logic suggests that denying access to it or its reasonable equivalent is harmful. So, since need was and is presumed here given that the State failed to establish otherwise at trial, some measure of harm must also be presumed.

Alternatively, if *Cain* does require a harm analysis, despite the holding of *White*, we again conclude that reversal is justified. As previously mentioned, the need for the information was presumed. Indeed, the State acknowledged in its appellate brief that there were inconsistencies in the testimony of those who had testified before mistrial was granted. Thus, a transcript of that prior testimony arguably could have been used to highlight the inconsistencies or affect the credibility of the witnesses who testified at the later trial. Moreover, we find disingenuous the State's argument that because the six witnesses involved did not see the actual assault for which appellant was convicted, the information they imparted was of minimal worth. If their testimony was so unimportant, one is left to wonder why the State proffered it in the first place. The record provides that answer for the testimony included not only a description of the circumstances before and after the assaults for which appellant was convicted but also multiple assaults he committed with the golf club (including that upon victim Cox). It also described appellant entering his house after the golf club was taken from him, returning with large knives in hand, "running at anybody he saw" with those knives, and eventually cutting an individual named Mickey. That is hardly irrelevant evidence.

We also note that the number of witnesses involved was not one or two, but rather six. Those six were slightly less than half of the fourteen the State ultimately called during the guilt/innocence phase of the trial. This too indicates that the testimony withheld from appellant was more than incidental.

That the quantum of evidence warranting conviction was not small is also an indicia to consider. Yet, it alone is not determinative. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). Nor should it be. Constitutional rights exist to protect not simply the

6

innocent. Those guilty are entitled to partake of them as well. Indeed, it may be those eventually found guilty who are to benefit the most from them since their observance goes far in assuring a lawful verdict. So, while it may well be that a plethora of evidence indicative of guilt appears of record, we nonetheless must take caution to avoid placing more importance on the ends to be gained by conviction than the means by which conviction is secured. This is especially so here since the violation could have been easily avoided.

Whether the error affected the integrity of the process is what we have to ask and answer. *Scott v. State*, 227 S.W.3d at 690. It is difficult for us to conclude here that it did not. Consequently, we reverse the judgments and remand the cause to the trial court.


Brian Quinn
Chief Justice


Publish.