Affirmed in Part and Reversed and Remanded in Part, and Opinion filed May
24, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01059-CR

___________________

 

George Edward Blackshear,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 338th District Court

Harris County,
Texas



Trial Court Cause No. 1229051

 



 

 

OPINION

A jury
found appellant George Edward Blackshear guilty of possession of a controlled
substance, enhanced by two prior felony convictions.  The jury, however, could
not agree what punishment to give him, and the trial judge declared a
mistrial.  A second jury, empanelled to determine punishment only, found both
enhancements true and sentenced Blackshear to eight years’ imprisonment and a
$2,500 fine.  On appeal, Blackshear complains that the trial court erred in (1)
overruling defense counsel’s objection to the admission of extraneous conduct
and (2) denying Blackshear’s motion for continuance, which he sought to obtain
a transcript of his first trial for use at his second trial.  We reverse and
remand for a new trial on punishment only.  

I

            Houston
Police Department narcotics officers arrested George Edward Blackshear for
possession of less than a gram of cocaine following an undercover sting operation. 
On the night of August 19, 2009, officers J. Castro and Thomas Chapman drove in
an unmarked vehicle to a gas station they testified was known for illegal drug
activity.  They saw Blackshear and another man later identified as Andruce Ball
waving people down in the parking lot.  Officer Castro exited the unmarked car
and walked to a pay phone in the parking lot, where he was approached by Ball. 
After a brief conversation, Ball waved for Blackshear to join them.  Officer
Castro testified he then told Blackshear he wanted to buy some crack cocaine
and that Blackshear pulled from his pocket a baggie containing what appeared to
be several crack cocaine rocks.  Officer Castro then gave a “bust” signal to
Officer Thompson, and uniformed officers moved in to arrest Blackshear and
Ball.  The officers seized a bag of rocks from Blackshear’s pants, which field-testing
and subsequent lab analysis confirmed was cocaine. 

            Ball
testified at Blackshear’s trial that he had not waved down anyone at the gas
station, but rather that the officers had approached him and given him money to
buy drugs.  Ball testified he did not buy any drugs but kept some of the
officers’ money.  Ball further testified that Blackshear was an employee of the
gas station and was sweeping the parking lot when the officers arrived.  Ball
testified the officers never spoke to Blackshear and that Blackshear was in no
way involved in the transaction.  Upon arresting Ball and Blackshear, Ball
testified officers threatened to “put a rock on” both men. 

            

II

            In
his first issue, Blackshear complains the trial court erred by allowing Officer
Castro to testify he knew Blackshear by his nickname through “other drug
dealers on the street in that particular area.”  During direct examination of
Officer Castro, the following exchange took place:

Q.  Earlier on direct you testified that you knew Mr. Blackshear
as a

nickname by Ren?

A.  Yes.

Q.  How did you know that?

A.  A bunch of drug users and—

MS. SHANNON (defense counsel): 
Your honor, I'm going to object.

MR. WOMBLE (prosecutor):  Judge,
she's opened the door.

THE COURT:  It's overruled.

Q.  How do you recognize him as Ren?

A.  Through other drug dealers on the street in that
particular area.

Q.  Have you seen Mr. Blackshear in the area on the streets
before?

A.  Yes, I have.

Q.  Few or many times?

A.  I’d say two or three times when I’m purchasing narcotics
from

different individuals.

 

            Blackshear
complains Officer Castro’s testimony violates Texas Rule of Evidence 404(b),
which provides that “[e]vidence of other crimes, wrongs or acts is not
admissible to prove the character of a person in order to show action in
conformity therewith.”  See Tex. R. Evid. 404(b); Johnston v. State,
145 S.W.3d 215, 219 (Tex. Crim. App. 2004).  The testimony was elicited,
Blackshear argues, “solely to imply that [Blackshear] was a drug dealer . . .
[a]nd that [Blackshear] had been involved in other extraneous drug transactions
with the officer . . . .”  Blackshear further argues that even if the
extraneous conduct is logically relevant to prove some fact, it is not relevant
to a disputed “fact of consequence” in the case apart from its tendency to
prove conduct in conformity with character, and that any probative value is
substantially outweighed by the danger of unfair prejudice.  See Johnston,
145 S.W.3d at 219–20 (citing Tex. R. Evid. 403 and 404(b)).  

            The
State initially argues defense counsel failed to preserve error.  We agree.  To
preserve error for appellate review, a defendant must make a timely objection
that specifically states the legal basis for the objection.  See Tex. R.
App. P. 33.1(a); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App.
1990).  To make a specific objection, a party must “‘let the trial judge know
what he wants, why he thinks himself entitled to it, and . . . do so clearly
enough for the judge to understand him at a time when the trial court is in a
proper position to do something about it.’”  Shaw v. State, 329 S.W.3d
645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet. ref’d) (quoting Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).  The failure to
state any legal basis for an objection amounts to a general objection that
preserves nothing for review.  Valdez v. State, 826 S.W.2d 778, 782
(Tex. App.—Houston [14th Dist.] 1992, no pet.); see also Denison v. State,
651 S.W.2d 754, 760 (Tex. Crim. App. 1983) (holding an objection that was
“general in nature” fails to preserve error).  

Here, defense counsel
objected but did not provide any legal explanation for why the testimony was
inadmissible.  See Medina v. State, 7 S.W.3d 633, 643 (Tex. Crim. App.
1999) (holding that general relevancy objection did not preserve error as to
appellant’s claim that extraneous offense evidence was inadmissible under Rule
404(b)).  Nothing in the record shows that defense counsel intended to rely on
either Rule 403 or Rule 404, and there is no indication the trial judge
understood the basis for the objection absent any explanation.  See Rezac,
782 S.W.2d at 870; Denison, 651 S.W.2d at 760; Shaw, 329 S.W.3d
at 654; Valdez, 826 S.W.2d at 782.  Having been presented with nothing
for review, we overrule Blackshear’s first issue.  

II

            In
his second issue, Blackshear complains the trial court erred in denying his
motion for continuance to obtain a transcript of his first trial before
convening his second trial.  The jury in Blackshear’s first trial returned a
guilty verdict but could not agree on punishment.  After declaring a mistrial,
the court announced it would empanel a new jury the same day to re-try
Blackshear on punishment only.  Defense counsel immediately requested a
continuance to attain a copy of the transcript from the previous trial,
asserting “it would be ineffective assistance of counsel without having it,
unless [the court reporter] can make it at lunchtime . . . .”  The trial judge
denied the motion, based on “the length of the testimony in this case being
less—total, than three hours, if you take the time they were on the stand . . .
.”  The trial court also noted guilt was no longer an issue and that new jury
would have only punishment to consider.  A jury for Blackshear’s second trial
was chosen the same day, and the case was tried the following day.  The second
jury, finding two enhancements true, sentenced Blackshear to eight years’
imprisonment and a $2,500 fine.  

            The
State must, as a matter of equal protection, provide indigent prisoners with
the basic tools of an adequate defense or appeal when those tools are available
for a price to other prisoners.  See Britt v. North Carolina, 404 U.S.
226, 227 (1971).  Among these basic tools is a transcript of prior proceedings
when needed for an effective defense or appeal.  Id.; White v. State,
823 S.W.2d 296, 298 (Tex. Crim. App. 1992).  In determining whether a defendant
needs a transcript, the Britt court took two factors into account:  (1)
the value of the transcript to an effective defense, and (2) the availability
of alternative devices that would fulfill the same functions as a transcript.  Britt,
404 U.S. at 227; White, 823 S.W.2d at 298.  

In considering the first
factor, the Britt court noted that “our cases have consistently
recognized the value to a defendant of a transcript of prior proceedings,
without requiring a showing of need tailored to the facts of the particular
case.”  Id. at 228.  Ordinarily, the court concluded, a
transcript of a prior mistrial is valuable to the defendant in at least two
ways:  as a discovery device in preparation for trial, and as a tool at the
trial itself for the impeachment of prosecution witnesses.  Id.  The
Court of Criminal Appeals has expressly presumed a defendant’s need for a
transcript and has imposed upon the State the burden to rebut the presumption. 
See Armour v. State, 606 S.W.2d 891, 894 (Tex. Crim. App. [Panel Op.]
1980).   

As for the second factor,
according to the White court “requiring the defendant to rely on memory
or notes from the previous trial or providing limited access to the court
reporter during the course of the second trial is generally insufficient.”  White,
823 S.W.2d at 298 (discussing Britt, 404 U.S. at 229).  Under the facts
of Britt itself, however, the court determined that an acceptable
alternative was indeed available.  In that case the evidence showed the court
reporter “would at any time have read back to counsel his notes of the
mistrial, well in advance of the second trial, if counsel had simply
made an informal request.”  Id. (emphasis added).  

The facts in this case
are similar to those facing the Court of Criminal Appeals in White v. State. 
Like this case, the arrest in White resulted from a narcotics sting.  823
S.W.2d at 300.  The first trial in White consisted of two hours
of testimony, while the testimony in this case’s first trial lasted about three
hours.  See id. at 297.  After the trial judge declared a mistrial in White,
he set the case for a second trial four days later.  Id.  The second
trial in this case occurred the day after the first trial.  And the trial
judges in both cases based their denial of the defendant’s motion for
continuance on the short duration of testimony at the first trial and the fact
that the second trial was to occur quickly on the heels of the first.[1]  See id. at
297–98.  The White court analyzed Britt and its own relevant case
law and concluded the denial of the motion for continuance was reversible
error.  Id. at 299–300.  There is, however, a key distinction between
this case and White.  In this case, the jury agreed on a guilty verdict
but not on punishment.  The parties do not point to, and we are not aware of,
any reported decisions addressing the requirement to provide a free transcript for
a retrial on punishment only.  

The State argues
Blackshear did not need a transcript of the first trial because it concerned
the guilt-innocence determination and the second trial would concern just
punishment.  Therefore, the State contends, “any potential impeachment of the
State’s witnesses based upon their prior testimony . . . would have necessarily
focused on whether [Blackshear] had committed the crime and not how
he had done so, an irrelevant inquiry in light of [Blackshear’s] conviction.” 
In support of this contention, the State directs us to Oregon v. Guzek,
in which the United States Supreme Court held that neither the Eighth nor the
Fourteenth Amendment requires the admission of “residual doubt” evidence at the
punishment phase.  See 546 U.S. 517, 523–25 (2006) (holding defendant
did not have constitutional right to present new alibi evidence at
sentencing).  

We acknowledge that
certain constitutional guarantees are inapplicable at the punishment phase. 
Likewise, evidence that is otherwise inadmissible in the guilt-innocence phase
is often properly introduced at the punishment phase.  Nevertheless, under the
facts of this case, we cannot say that Blackshear has shown no need for a
transcript just because the second trial concerned punishment only.  

The nature of the
testimony presented at Blackshear’s retrial makes it unlike the typical
punishment-phase proceeding.  At his first trial, the State did not offer any
additional witnesses at the punishment phase, choosing instead to re-offer the
evidence put forth at the guilt-innocence phase.  On retrial, however, the
State put on five witnesses, all of whom testified at the guilt-innocence phase
the first time.  Although the retrial was technically on punishment only, the
State essentially presented the same evidence and elicited the same testimony
as it did during the guilt-innocence phase of the first trial.  Rather than
call witnesses to testify to facts related only to punishment, the State proffered
evidence focused on Blackshear’s guilt.  The State’s strategy was reasonable. 
It is difficult to ask a new jury to assess punishment without any context of
the defendant’s crime or the evidence that convinced a previous jury to find
him guilty.  But the State’s strategy at trial undermines its argument on
appeal that Blackshear had no need to impeach the witnesses against him.  

In the first trial, the
jury could have relied only on the evidence from the guilt-innocence phase when
considering Blackshear’s punishment, because no further evidence was
presented.  See Duffy v. State, 567 S.W.2d 197, 208 (Tex. Crim. App.
1978) (holding the jury can consider at the punishment phase all evidence
adduced at the guilt-innocence phase).  In the second trial, essentially the
same testimony was presented for purposes of punishment, and again the State
offered no additional witnesses beyond those it offered at the guilt-innocence
phase of the first trial.  Accordingly, at the State’s behest, the second jury
was assessing punishment on essentially the same evidence as the first jury
determined guilt.  The State argues Blackshear did not need to impeach the
witnesses at his retrial because any impeachment would have gone to whether
the defendant committed the crime, whereas the evidence at the punishment phase
goes only to how the crime was committed.  

The difference is that
whenever a witness testifies twice about the same thing, there is a chance his
story will change.  It is through impeachment that a cross-examiner exposes
such flaws in testimony.  In the first trial, no witness testified for a second
time during the punishment phase—the State merely re-urged the testimony
already given.  But at the retrial, the witnesses from the first trial offered
new testimony about the same set of facts.  Blackshear’s counsel should have
been able to use the transcript from the first trial in his cross-examination
in the second.

We conclude the value of
the transcript to Blackshear at his retrial was not diminished merely because
his retrial concerned punishment only.  See Britt, 404 U.S. at 227. 
Because the procedural and substantive differences between the guilt-innocence
and punishment phases of a criminal trial form the only basis for the State’s
contention that Blackshear did not need a copy of the transcript, we find the
State has failed to rebut the presumption that a defendant needs a transcript of
a prior mistrial to mount an effective defense.  See Armour, 606 S.W.2d
at 894.  Furthermore, there is no indication from the record, nor does either
party suggest, that “alternative devices” were available that would “fulfill
the same functions as a transcript.”  See Britt, 404 U.S. at 227. 
Accordingly, the trial court reversibly erred when it denied Blackshear’s
motion for a continuance to obtain a copy of the transcript from his first
trial.[2] 
Britt, 404 U.S. at 230; White, 823 S.W.2d at 299–300; Armour,
606 S.W.2d at 894; Billie v. State, 605 S.W.2d 558, 562 (Tex. Crim. App.
1980).    

* * *

We sustain
Blackshear’s second issue and reverse and remand the trial court’s judgment for
proceedings consistent with this opinion.  

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison

Publish
— Tex. R. App. P. 47.2(b).









[1] The trial judge in White
also refused to continue the case because all of the persons involved in
the first trial, including the court reporter, were also participating in the
second trial.  White, 823 S.W.2d at 298.  





[2] Although the United
States Supreme Court and the Court of Criminal Appeals have consistently
treated the failure to provide an indigent defendant with a copy of the
transcript of a previous trial before retrial as reversible error, the State
urges us to apply a harm analysis, noting that White pre-dated Cain
v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997), in which the State
argues the Court of Criminal Appeals held that only structural error is immune
to a harm analysis.  The State also directs us to Canales v. State, 290
S.W.3d 469, 472 (Tex. App.—Amarillo 2009, pet. ref’d), arguing that the
Amarillo court of appeals noted it was required to presume harm under White,
but “nevertheless conducted a harm analysis.”  The Canales court’s harm
analysis, however, was offered in the alternative to the position the court
ultimately took, which is that “because White has not been overruled, we
. . . presume that appellant was harmed by the trial court’s decision to
withhold from him a transcript of the prior trial.”  Id.  Notably, the
Court of Criminal Appeals refused to review Canales.  Therefore, we
agree with the Amarillo court’s disposition in Canales; because White
has not been overruled, we presume Blackshear was harmed by the denial of his
motion for continuance.