253·15   254·15

CAUSE NUMBER: PD-0253-15

IN THE COURT OF CRIMINAL

APPEALS OF TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 0 1 2015

Abel Acosta, Clerk

ROYCE WILLIAM TAWATER,

Petitioner,

vs.

THE STATE OF TEXAS,

Respondent.

Seeking Review of the Sixth District Court
of Appeals' Judgement and Opinion in
Cause No: 06-14-00094-CR

FILED IN
COURT OF CRIMINAL APPEALS

APR 0 1 2015

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

Oral Argument is Requested

Royce W. Tawater,
Pro Se
TDCJ-CID #1950643
Beto Unit
1391 FM 3328
Tennessee Colony, Texas
75880

CAUSE NUMBER: PD-0254-15

IN THE COURT OF CRIMINAL
APPEALS OF TEXAS

ROYCE WILLIAM TAWATER,
Petitioner,

vs.

THE STATE OF TEXAS,
Respondent.

Seeking Review of the Sixth District Court
of Appeals' Judgement and Opinion in
Cause No: 06-14-00095-CR

PETITION FOR DISCRETIONARY REVIEW

Oral Argument is Requested

Royce W. Tawater,
Pro Se
TDCJ-CID #1950643
Beto Unit
1391 FM 3328
Tennessee Colony, Texas
75880

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| II. | IDENTITIES OF PARTIES AND COUNSEL | ii |
| III. | INDEX OF AUTHORITIES | ii |
| IV. | STATEMENT REGARDING ORAL ARGUMENTS | 1 |
| V. | STATEMENT OF THE CASE | 1 |
| VI. | STATEMENT OF PROCEDURAL HISTORY | 2 |
| VII. | GROUNDS FOR REVIEW | 3 |
| VIII. | ARGUMENT AND AUTHORITIES | 3 |
| IX. | PRAYER | 5 |
| | UNSWORN DECLARATION | 7 |
| | CERTIFICATE OF SERVICE | 7 |
| | APPENDIX | |

Appointed appellate counsel transmitted a single copy of the Sixth Court of Appeals' Opinion/Judgements. Petitioner has no means to photocopy those documents in order to include them in this petition. However, the originals are on copy with the clerk of the appellate court.

## II.
### IDENTITIES OF PARTIES AND COUNSEL

ROYCE WILLIAM TAWATER                                     PETITIONER


DAVID COUCH                                               TRIAL COUNSEL
    2815 Wesley St., P.O. Box 324                    (appointed)
    Greenville, TX 75403


KATHERINE FERGUSON                                       APPELLATE COUNSEL
    2900 Lee St., Ste. 102                           (appointed)
    Greenville, TX 75403


STEPHEN B. LILLEY                                        PROSECUTOR


HONORABLE RICHARD A. BEACOM, JR.                         TRIAL JUDGE


## III.
### INDEX OF AUTHORITIES

|                                                                 | Page |
|-----------------------------------------------------------------|------|
| BILLIE v. STATE, 605 S.W. 2d 558 (Tex. Crim. App. 1980)         | 4    |
| BLACKSHEAR v. STATE, 385 S.W. 3d 589 (Tex. Crim. App. 2012)     | 4    |
| BRITT v. N. CAROL., 404 U.S. 226 (1971)                         | 3    |
| STRICKLAND v. WASHINGTON, 466 U.S. 694 (1984)                   | 5    |
| WHITE v. STATE, 823 S.W. 2d 296 (Tex. Crim. App. 1992)          | 3/5  |

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

COMES NOW, ROYCE WILLIAM TAWATER, "Petitioner" pro se in the above-styled and numbered cause numbers* and pursuant to Rule 68 of the Texas Rules of Appellate Procedure, this Petition For Discretionary Review, and for such, Petitioner would respectfully show this Court as follows:

## IV.

### STATEMENT REGARDING ORAL ARGUMENT

This petition challenges the court of appeals' holding that A) the trial court did not err in denying counsel's request for a reporter's record from a prior proceeding, and; B) trial counsel was not ineffective for failing to properly request such reporter's record. These types of arguments appear to be improper in light of prior decisions from this Court. These are important issues of law and these types of arguments aree frequently appearing in appellate decisions from the various courts of appeal and the bench and bar of this Court and need clarification from this Court concerning whether these types of arguments are appropriate. Therefore, this Court should grant oral argument so that counsel for both sides may more fully present their positions and answer any questions this Court may have after preliminarily reviewing this case.

## V.

### STATEMENT OF THE CASE

Petitioner was charged with the offenses of aggravated assault with a deadly weapon, (trial number 29,310), deadly conduct discharge firearm, (trial number 29,311), aggravated assault with a deadly weapon, (trial number 29,502), and; unlawful possession of a firearm by a felon, (trial number 29,503), (CR: 1). After a jury was selected, seated and sworn the four causes were tried together in February, 2014. The jury convicted Petitioner of the offense of possession of a firearm by a felon, but could not reach a verdict on the other three charges. However, the following month another jury was seated and subsequently convicted Petitioner

---

*   Petitioner has included a request to consolidate both of the instant case for economy; both cases encompass the same record. Appellate counsel filed a "consolidated brief" in this cause.

of Deadly Conduct Discharge Firearm, (#29,311; C.O.A. #06-14-00095-CR; PD-0254-15), and; Aggravated Assault W/Deadly Weapon, (#29,310; C.O.A. #06-14-00094-CR; PD-0253-15). The Sixth Court of Appeals affirmed the trial court's Judgement, (Possession of a firearm by a felon, ##29,503, C.O.A. #06-14-00075-CR, PD-0004-15) on December 10, 2014. Petitioner filed a timely petition for discretionary review in that cause. Additionally, the Sixth Court of Appeals affirmed the trial court's judgements in case numbers 06-00094-CR & 06-14-00095-CR.

In the instant cause numbers, appointed appellate counsel filed a consolidated brief arguing that there was error in the trial court's denial of trial counsel's request for a copy of the reporter's record from a prior proceeding, and; trial counsel was ineffective for failing to properly request such reporter's record.

In a three-part standard of review, the Sixth Court of Appeals opined:

I. <u>RECORD OF PREVIOUS TRIAL</u>: a reviewing court is to consider:
   1. The value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and
   2. The availability of alternative devices that would fulfill the same functions as a transcript, (citing: BRITT v. N. CAROL., 404 U.S. 226, 227 (1971)(Opinion @2)

II. <u>PRESERVATION OF ERROR</u>: "As a prerequisite to presenting a complaint for appellate review, the record must show that···the complaint was made to the trial court by a timely request, objection, or motion." (citing: Tex. R. App. Proc., 33.1(a)(1)(Opinion @4)

III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>: Appellate counsel "failed to show a reasonable probability that the outcome of [Petitioner's] second trial would have been different had [trial] counsel requested the reporter's record from the first trial."(citing: STRICKLAND v. WASHINGTON, 466 U.S. 694 (1984)(Opinion @8)


## VI.

### STATEMENT OF PROCEDURAL HISTORY

Appointed appellate counsel, Katherine Ferguson, has wholly failed to transmit copies of the Brief Of Appellant, Clerk's Record, and Reporter's Record to Petitioner in the instant causes in order that he may more fully, specifically, cite the record*.

The Sixth Court of Appeals issued its Opinion/Judgement on February 4, 2015. Counsel transmitted the Opinion/Judgement six (6) days later. Upon receipt of the Opinions/Judgements, (02/17/15), Petitioner filed motions to extend the time to file the petition for discretionary review & suspend Rule 9.3(b) on March 5, 2015, which the Court granted on March 6, 2015. The current deadline to file the petition is May 5, 2015.

---

\* Petitioner has kept counsel updated with current address changes. Also, on January 1, 2015 Petitioner specifically asked counsel for the record in this cause. To this date counsel has failed to respond to that request.

# VII.

## GROUNDS FOR REVIEW

1.  The Sixth Court of Appeals erred in determining that the trial court did not err in denying counsel's request for the reporter's record from a prior proceeding.

2.  The Sixth Court of Appeals erred in determining that appellate counsel failed to show harm under the Strickland analysis, in that counsel failed to demonstrate that trial counsel's use of the transcript of the prior proceeding "could have been reasonable likely to change the outcome" of the second trial (opinion @14)

# VIII.

## ARGUMENT AND AUTHORITIES

The Sixth Court of Appeals first opines that a reviewing court must determine whether the trial court abused its discretion in denying trial counsel's request for a copy of the transcripts from the prior proceeding by determining whether Petitioner actually needed the transcript. In making this determination the Sixth Court of Appeals had the luxury to compare the two records.

First, the court of appeals should have considered "the value of the transcript to [Petitioner] in connection with the trial for which it was sought," and; "the availability of alternative devices that would fulfill the same function as a transcript." (See: BRITT v. N. CAROL., 404 U.S. 226, 227 (1971) BRITT's "alternative device" would be to interrupt the proceeding at numerous points to have the "court reporter···read back to counsel [the reporter's] notes of the mistrial." In WHITE v. STATE, 823 S.W. 2d 296 (Tex. Crim. App. 1992), this Court determined that the frequent interruptions "to review with the court reporter any testimony from the first trial if a conflict with prior testimony arose at the trial," produced a "cumberson burden" on the trial process. WHITE, supra @298. BRITT, in contrast to WHITE, had the opportunity to make an "informal request" "well in advance of the second trial" to have the reporter read the notes, whereas WHITE only had a 4-day hiatus between the two trials necessitating the "cumberson burden" of interruptions. Petitioner, like BRITT, not WHITE, had ample opportunity to make an "informal request" for the transcripts.

—  —

Britt's other component, "the value of the transcript to the defendant in connection with the trial for which it is sought," bears a distinct importance in Petitioner's cause. As noted, the jury was unable to reach a verdict on three of the more serious charges; aggravated assault with a deadly weapon and deadly conduct firearm discharge, (x2); all the more reason for counsel to make a proper request before the second trial; in order to use testimony from the first trial if a conflict with prior testimony arose at the second trial. No one can know whether the record would be used to impeach any given witness. The point is: the record had "value" to the defense. In a dichotomous opinion the Sixth Court of Appeals quotes BILLIE v. STATE, 605 S.W. 2d 558, 560-61 (Tex. Crim. App. 1980), that "without a transcription of the court reporter's notes from the initial trial, there was no viable way of knowing just how many more inconsistencies existed for impeachment purposes." However, using BLACKSHEAR v. STATE, 385 S.W.3d 589 (Tex. Crim. App. 2012) as a comparison to Petitioner's case, and never determining whether Petitioner was entitled to the record* the court of appeals reflected that counsel for Blackshear — not Blackshear himself —, "filed no sworn motion for continuance" in accordance with the Code of Criminal Procedure; that the oral unsworn motion failed to preserve his complaint for appellate review.

It is important to note that Petitioner had no standing with the trial court to make any motion — sworn or unsworn — in order to be "in accord with the Code of Criminal Procedure." (Opinion @5); Defendant's are not entitled to "hybrid counsel."

The portion of the record that the court of appelas relies on to compare Blackshear to Petitioner is from a pretrial hearing the week before the second trial. Petitioner misunderstands the state's need to relabel evidence for use in the second trial; thinking that the evidence would be effectively altered, possibly to Petitioner's detriment. The court of appeals notes that Petitioner's reasoning was not clear. However, the trial court allows Petitioner to ramble on without any caution to trial counsel — who sits silent during the run-on sentences. The court of appeals allows that this is proper procedure and then determines that nothing was preserved for appellate review.

---

\* As noted, Petitioner does not have access to the Brief of Appellant nor the Appellee's Brief ergo; no way of knowing whether the state failed to rebut the presumption that Petitioner needed the record.

**Ineffective Assistance of Counsel:** Appellate counsel argued that trial counsel was ineffective for failing to PROPERLY request the reporter's record. In their Opinion, the court of appeals found that "[appellate counsel] failed to show a reasonable probability that the outcome of [the] second trial would have been different had [trial] counsel requested the reporter's record."

The court of appeals concedes to counsel's deficiency in failing to properly request and obtain the record. (Opinion @8-9) However, the court charges appellate counsel with failing to show the harm enunciated in the Strickland Test. (STRICKLAND v. WASHINGTON, 466 U.S. 694 (1984) What's unusual is that the court of appeals takes the extraordinary step to compare the record of the two trials; making the second part of the Strickland Test future tense. Had trial counsel properly argued that the record was needed, he could not possibly show that the two trial would vary in any fashion. The Sixth Court of Appeals applies the wrong standard of review

After appellate counsel charged trial counsel with the deficiency, the burden then shifts to the state to rebut the need for the record to present an effective defense." "Without this showing by the state, HARM WAS PRESUMED." WHITE v. STATE, 823 S.W.2d 296, 299 (Tex. Crim. App. 1992) Instead of that rebuttal, the state simply argues that the issue was not preserved for appellate review.

The Sixth Court of Appeals ultimately opines that Petitioner "has not shown how [] possession of the reporter's record from the first trial could have been reasonably likely to change the outcome of the second trial."(Opinion @14) This abstract reasoning boggles the mind as it places future tense in a past tense scenerio. Counsel, via Petitioner, informally asks for the record by and through an oral motion for continuance. At that point the state was required to rebut the issue. Instead, the trial court denied the request for continuance, thus, the record.

The question on appeal encompasses whether trial counsel "properly" asked for a copy of the reporter's record. The state claims that the issue was not preserved for appellate review, then the court of appeals opines that "harm" was not displayed. Originally, the trial court denied a continuance – not the record.

## IX.
## PRAYER

WHEREFORE, PREMESIS CONSIDERED, Petitioner respectfully prays this Court grant

— —

leave to consolidate PD-0253-15 and PD-0254-15, grant this Petition for Discretionary Review, order a full briefing on the issues presented herein, and after considering the merits, reverse the judgements of the court of appeals, remand this cause to the trial court for a new trial, and grant such other and further relief as Petitioner may show himself deserving, at law and in equity.

03/29/15

Respectfully submitted,

Royce W. Tawater,
Pro Se

C.c. Tex. Attny. Gen.
file/rt

## UNSWORN DECLARATION

"I, Royce W. Tawater, TDCJ-CID #1950643, being presently incarcerated in the Beto Unit of the TDCJ-CID, declare under penalty of perjury that the above and foregoing are both true and correct."

Executed on this the 25th day of March, 2015

*Royce Tawater*

Royce W. Tawater

## CERTIFICATE OF SERVICE

This is to further certify that I have mailed a true and correct copy of these Petitions For Discretionary Review, and Motion To Consolidate, to the Texas Attorney General's office, P.O. Box 12548 - Capitol Station, Austin, TX 78711-2548, First Class Mail, postage prepaid, by placing same in the Beto Unit's mail drop-box, designed for that purpose, on this the 25th day of March, 2015.

*Royce Tawater*

Royce W. Tawater

C.c. file/rt



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00094-CR

_____

ROYCE WILLIAM TAWATER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,310

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Royce William Tawater, convicted of the offense of aggravated assault with a deadly weapon, has filed an appeal claiming that the trial court erred in its denial of his request for the reporter's record[1] from a previous trial on the same charge[2] and also claiming that his counsel was ineffective in his failure to make a proper request for that record. Upon review of the appellate record in this case, we overrule Tawater's points of error and affirm the trial court's judgment convicting Tawater of aggravated assault with a deadly weapon.[3]

## I.    Record of Previous Trial

An indigent defendant has a right under the Equal Protection Clause to the transcript of a prior proceeding "when that transcript is needed for an effective defense or appeal." *Britt v. N. Carolina*, 404 U.S. 226, 227 (1971). In determining whether a defendant needed a transcript, a reviewing court is to consider: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Id.* Regarding the first consideration, "it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at

---

[1] In order to conform more closely with the terminology used in some of the cases cited as precedent here, we use the terms "reporter's record" and "transcript" interchangeably in this opinion.

[2] Tawater first stood trial in February 2014 on four indictments. The jury convicted him of the offense of unlawful possession of a firearm by a felon, but could not reach verdicts on the other three charges. This Court affirmed the unlawful possession of a firearm conviction in *Tawater v. State*, No. 06-14-00075-CR, 2014 WL 6977070 (Tex. App.—Texarkana Dec. 10, 2014, no pet. h.) (mem. op.). We direct the reader to that case for a detailed recitation of the facts which gave rise to the four indictments. The trial court declared mistrials in those cases in which the jury could not reach a verdict. In April 2014, Tawater stood trial for two of the three remaining charges, resulting in convictions for aggravated assault with a deadly weapon and deadly conduct. *See* TEX. PENAL CODE ANN. §§ 22.02(a), 22.05(b) (West 2011).

[3] Tawater filed a single consolidated brief in this matter and in his appeal from a simultaneous conviction of deadly conduct under our cause number 06-14-00095-CR. The same issues have been raised by Tawater in both cases.

least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Id.* at 228. The *Britt* court found that under the particular circumstances of that case, Britt's attorney had ample access to the court reporter who "would at any time have read back to counsel [the reporter's] notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request." *Id.* at 229. An adequate alternative being available to Britt, the trial court did not err in denying Britt's request for a free reporter's record of his previous mistrial.

The Texas Court of Criminal Appeals took the ruling in *Britt* into account when considering *White v. State*, 823 S.W.2d 296 (Tex. Crim. App. 1992). In *White*, after a hung jury dictated the entrance of an order of mistrial, a retrial was scheduled for four days later. The day before the second trial, White requested a transcription of the testimony of three of the State's four fact witnesses, but was told that the transcription would not be available on such notice. Learning this, White filed a motion for continuance, a motion which was denied on the day set for the retrial to commence. The trial court noted, in support of the denial, that the first trial was not lengthy,[4] that it had taken place only four days before trial was scheduled to commence once again, and that the same attorneys and court reporter would be involved in the second trial as participated in the first. The trial court said that White's trial counsel would be allowed "to review with the court reporter any testimony from the first trial if a conflict with prior testimony arose at the retrial." *Id.* at 298. The Texas Court of Criminal Appeals contrasted the situation in *White* from that in *Britt* finding the "availability of the court reporter *prior to retrial* [to be] a

---

[4]The first trial lasted only about two hours.

3

critical distinction" between the two. *White*, 823 S.W.2d at 299. That court noted that the "more cumbersome method of stopping his cross-examination and pausing while the court reporter finds the relevant notes and reads back the inconsistent testimony to the jury" was a poor substitute to advance access to "specific testimony from the earlier mistrial." *Id.* The court went on to rule that under the circumstances that existed, the denial of White's request for a continuance was error, compounded by the State's failure to show that White had no need of the record to present an effective defense.[5] Without this showing by the State, harm was presumed, and the denial of the continuance was reversible error. *Id.* at 299–300.

## II. Preservation of Error

"As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1). "[P]reservation of error is systemic and must be considered, regardless of whether the issue is raised by the parties." *Flowers v. State*, 438 S.W.3d 96, 106 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012)).[6] Tawater's appellate point of error is that the trial court erroneously denied his request for a transcribed copy of the reporter's record from the first trial. In order to

---

[5] In *Armour v. State*, 606 S.W.2d 891, 894 (Tex. Crim. App. [Panel Op.] 1980), the Court of Criminal Appeals held that a "defendant's need for a transcription of the State's testimony from a former trial will be presumed, and the State has the burden of showing a lack of need if it desires to oppose the defendant's motion for a transcription of the testimony." In *Billie v. State*, 605 S.W.2d 558, 560–61 (Tex. Crim. App. 1980), the court found reversible error even where the defense, using his notes from the first trial, was able to effectively cross-examine the complainant and secure a stipulation from the State as to discrepancies in the complainant's testimony between the two proceedings. Despite the stipulations, "without a transcription of the court reporter's notes from the initial trial, there was no viable way of knowing just how many more inconsistencies existed for impeachment purposes." *Id.*

[6] The State argues that Tawater failed to adequately preserve this complaint for our review.

4

adequately review this point of error, we must determine whether Tawater actually presented the trial court with a request for that record.

The Texas Court of Criminal Appeals fairly recently considered a quite similar situation and found that the issue had not been preserved for appeal. In *Blackshear v. State*, 385 S.W.3d 589 (Tex. Crim. App. 2012), the defendant's punishment phase ended in a mistrial. Before the retrial, Blackshear asked for a continuance because he did not have a copy of the reporter's record from the first trial. This is the means used by Blackshear to make that request:

> "Your Honor, I have a motion I need to put on the record. Your Honor, it's my understanding that I should ask for a continuance based on the fact that I do not have a copy of the transcript from the prior trial, and it would be ineffective assistance of counsel without having it, unless she can make it at lunchtime, a copy of the transcript to refer to the testimony."

*Id.* at 590. The trial court denied Blackshear's motion for a continuance. Although the intermediate appellate court held this denial to be reversible error,[7] the Court of Criminal Appeals held that the trial court did not err, relying on the fact that Blackshear filed no sworn motion for continuance as required by the Texas Code of Criminal Procedure. *See* TEX. CODE. CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2006). Blackshear's oral, unsworn motion failed to preserve his complaint for appellate review. *Blackshear*, 589 S.W.3d at 591.

In the case at bar, we find that Tawater did request a continuance (albeit not in accord with the Code of Criminal Procedure). In the course of discussing the State's motion to remove the exhibit labels from exhibits used in the first trial (so those exhibits could be used at the re-

---

[7]The appellate court found the State failed to rebut the presumption that Blackshear needed a copy of the reporter's record from the prior trial to present an effective defense, and there was no showing that any alternative was available to serve the same purpose as a transcript or reporter's record. *Blackshear v. State*, 342 S.W.3d 777, 782–83 (Tex. App.—Houston [1st Dist.] 2011), *rev'd*, 385 S.W.3d 589.

5

trial) and to substitute photographs of evidence for the actual evidence, Tawater's attorney asked Tawater why he objected to the State's request to remove the evidence stickers and substitute photographs. Tawater first told the trial court his reasons,[8] then added, "And I would like to -- I'd like to reschedule so that I can get the transcript -- for my lawyer to file for a motion to get the transcript so we can go over it." Tawater asked the trial court to reschedule the trial (the pretrial hearing at which these matters were discussed was held a week before voir dire and trial on the merits); effectively, then, Tawater asked for a continuance. He did not ask the trial court to provide the reporter's record from the February trial. He asked the court to reschedule, or continue, the case so Tawater's attorney could "file for a motion to get the transcript."

Tawater's request is much like that made in *Blackshear*—Blackshear asked for a continuance because he did not have the record of the earlier trial. Similarly, Tawater asked to reschedule, or continue, the case so his attorney could file a motion to obtain the reporter's record. Because the requests are so similar, the same result is required. Tawater filed no written, sworn motion for a continuance, as required by statute. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08. Thus, Tawater did not preserve this matter for our review. *See Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).[9] We overrule the first point of error.

---

[8]Tawater's reasons were not entirely clear:

> Because what was marked as exhibits -- Your Honor, I feel that there was a mistrial for a reason and by taking the sticker's off, I feel that, it being a mistrial, they should be -- that the DA should come up with new discovery evidence because there was a reason why there was a mistrial and I don't feel like it would be right by taking the stickers off of the exhibits as they was [sic] already presented to the trial already.

[9]Tawater cites *O'Rarden v. State*, 777 S.W.2d 455 (Tex. App.—Dallas 1989, pet. ref'd), as authority for an oral motion for continuance preserving the matter for appeal. There, the Dallas court entertained the appellant's

6

## III. Ineffective Assistance of Counsel

In his second point of error, Tawater contends that his trial counsel rendered ineffective assistance by failing to request the reporter's record from the February 2014 trial. To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the demonstrated deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Ineffective assistance of counsel claims must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011).[10] Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

As we discussed above, an indigent defendant has a right to access the reporter's record from an earlier trial, and the value of such a record is ordinarily assumed. *See Britt*, 404 U.S. at 228. The Texas Court of Criminal Appeals found that reversible error existed when the trial

---

challenge of the denial of his oral, unsworn motion for continuance on due process grounds. *Anderson* rejected this approach. *Anderson*, 301 S.W.3d at 279–81; *see also Blackshear*, 385 S.W.3d at 591.

[10]We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and that it was motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002). Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing an evaluation of the merits of ineffective assistance claims. *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id.* at 813–14. Only in the rare case "in which trial counsel's ineffectiveness is apparent from the record" may the appellate court "address and dispose of the claim on direct appeal." *Lopez*, 343 S.W.3d at 143.

7

court denied counsel's timely request for the reporter's record from a previous trial. *Billie*, 605 S.W.2d at 561. Similarly, the denial of the accused's motion for continuance so the prior record could be procured was found to be reversible error. *White*, 823 S.W.2d at 300; *Armour*, 606 S.W.2d at 894.[11] Had trial counsel properly requested the reporter's record of the earlier trial or had he filed a sworn motion for a continuance to obtain same, the trial court would have erred to deny either. While the same attorney represented Tawater at both trials, it could likely amount to deficient representation for counsel to fail to request a copy of the reporter's record from the first trial or to request a continuance so the transcript could be obtained.[12] However, we need not decide whether counsel's representation was deficient,[13] as we find that Tawater has failed to show a reasonable probability that the outcome of his second trial would have been different had counsel requested the reporter's record from the first trial.

The benefit of having a reporter's record from the first trial would have been Tawater's ability to cross-examine or impeach the State's witnesses if their testimony had deviated from the first trial. Assuming, arguendo, that trial counsel was deficient for having failed to request and

---

[11]In *Armour*, the denial of a continuance "amounted to a denial of appellant's request for a transcription of the [court reporter's ] notes." *Armour*, 606 S.W.2d at 892.

[12]That said, we also observe that the same attorney represented Tawater at both trials and was, therefore, familiar with the State's theory of prosecution and the likely testimony of the witnesses. This supports the presumption that counsel had a reasonable trial strategy. However, it also would demonstrate the helpfulness of having the reporter's record from the first trial on hand. If the attorney heard testimony significantly different at trial number two, having the record on hand would have been beneficial in impeaching or cross-examining the State's witnesses.

[13]Also, we hesitate to specifically find trial counsel's performance deficient based on the state of the record before us. While it is true that Tawater had a right to the earlier record and the trial court likely would have erred to deny a request for that record or a properly filed motion for a continuance, the record on direct appeal is usually inadequate to support an allegation of deficient performance, as that record is frequently undeveloped. *See Thompson*, 9 S.W.3d at 813–14. Here, no motion for new trial was filed. Further, there was no attempt, that we can see, to secure trial counsel's strategies or reasons for what he did or did not do.

8

obtain that prior record, Tawater would be required to follow through with *Strickland*'s second step of showing a reasonable probability that such failure prejudiced him. In other words, Tawater would be required to show that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[14]

To determine the existence of prejudice to Tawater, then, we have compared the testimony from the February trial (affirmed in *Tawater*, 2014 WL 6977070, at *5) with the current trial. Odis McCrary, a drug dealer who represented himself as a friend of Tawater's (who, despite their friendship, was chased by a pistol-brandishing Tawater and at whom Tawater fired several shots), testified much the same as he had in the first trial. In both trials, he described Tawater's arrival at McCrary's house on the day of the incident, after which a heated argument arose between the two men. McCrary then related that he had been chased down the street by Tawater, who was firing a pistol at him as they ran. In both trials, counsel elicited testimony that McCrary was a drug dealer currently under indictment for aggravated robbery and that he had previous criminal convictions which had resulted in a two-year prison term. All of this would have been effective to damage McCrary's credibility. In both trials, McCrary acknowledged having sent letters to the prosecutor and to Tawater's defense attorney in an effort to minimize Tawater's culpability. McCrary further admitted in both trials that he had been untruthful in an affidavit he had given to police officers wherein he represented that the conflict

---

[14]"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

between him and Tawater arose from a dispute over the right of possession of a pair of tennis shoes.

In his brief, Tawater points to the letters McCrary wrote to the district attorney and defense attorney and the affidavit he gave to police as descriptions of events that differed from his trial testimony. He attempts to characterize these as deviations from previous testimony, the knowledge of which could have been obvious if his counsel had properly requested (and been provided) the reporter's record from the first trial. Despite Tawater's assertion, the letters to the district attorney and defense counsel were virtually identical, save for the addressees and minor grammatical differences. The differences are shown here.

> I'm writin[g] this letter concerning Royce Tawater. I would like for the records to show that Royce Tawater did not discharge A [sic] firearm with intent to harm me Odis Dewayne McCrary. I ask that the District Attorney take into consideration this statement as being true without being forced to say so are [sic] being bribed too.

In both trials, McCrary explained that he wrote and sent these letters because he had known Tawater for many years and felt sorry for him. The letters were written at the behest of Tawater (for whom McCrary admitted that he had a "soft spot"), while the two of them were both in jail. McCrary's testimony about these letters remained consistent in both trials; Tawater's attorney was able to cross-examine McCrary about the letters. There is nothing to suggest that the presence of a reporter's record from the first trial would have enhanced Tawater's ability to cross-examine McCrary, and there is no explanation of the means by which the record of the first trial could have been employed to impeach McCrary any more effectively than was actually done. Likewise, defense counsel pointed out that the affidavit McCrary gave police was

10

misleading in that it represented the dispute between McCrary and Tawater to have arisen over the relative rights of the parties to a pair of tennis shoes. In both trials, defense counsel got McCrary to admit that the statements about the tennis shoes in his affidavits were untrue and that the statements in the affidavit were not in accord with his trial testimony. Counsel also was able to get McCrary to admit that his motive in lying about the source of the conflict was to divert the attention of the police away from McCrary's illegal drug sales. Having a transcript of the prior trial would not have made a difference in the cross-examination of McCrary regarding these matters.

Likewise, we have neither been directed to (nor can we find) anything else in the rest of the State's case which would have been successfully attacked if Tawater had been provided with a copy of the reporter's record of the first trial. There appears to have been nothing done or said in the first trial which would have afforded a means to undermine confidence in the outcome of the second trial.

In both the first and second trials, Manuel Vega testified that he saw and heard Tawater and a black man as they walked up the street in front of Manuel's father's house. He also said that he saw Tawater toss something into the backyard of the house across the street from that same house. Likewise, Manuel's brother, Joe Vega, testified consistently with his testimony at the first trial, saying that he had been inside the house he shared with his father when he heard a commotion outside, accompanied by what he said sounded like a gunshot. Going outside to investigate, Joe observed a black male running down the street away from Tawater, who was

waving a gun around and pointing it toward the black male. Joe said he then saw Tawater "fling" the gun across the fence of the house across the street from the Vega house.

Vicente Paulin Pastor[15] testified at both trials that he was in his home when he heard an explosion and immediately felt something strike him in his torso. On the floor, Pastor found a piece of metal, which his brother-in-law identified as a bullet. He gave this piece of metal to police, who later came to his home. There was a small difference in the testimony in the two trials regarding Pastor's account of the incident as given by him to police officer Jamaine Hamilton. In the first trial, Hamilton said that he met with Pastor outside Pastor's home and that Pastor handed him the bullet casing, which Hamilton said Pastor "pulled [] out of his right side." At the first trial, Hamilton testified that Pastor had said that he pulled the bullet slug from his side. At the second trial, the State asked Pastor about "some testimony from the officers that they remember you retrieving that bullet from your side and handing it directly to them." Pastor, through the interpreter, stated, "When after the bullet hit me, the bullet went down and fell on the ground." Although the testimony about whether the bullet fully exited Pastor's body after it struck him or whether Pastor found it necessary to retrieve it from under his skin may not have been consistent from one trial to another, it is not the kind of discrepancy which would be the grist for impeachment of his testimony. Accordingly, it does not appear that the existence before or during the second trial of the reporter's record from the first trial would have given a beneficial effect to a cross-examination of Pastor or the police officer.

---

[15]Pastor testified through an interpreter in both trials. At the first trial, he identified himself as "Vicente Paulin." When asked to spell his last name, he spelled Pestlor (which the court reporter noted "[sic]"); then when asked to spell Paulin, he spelled that surname as written.

12

Another example of the discrepancy in the testimony in the two trials involved evidence given by Chris Neaville, Hamilton's partner, who was also called to the scene. Neaville described, at both trials, meeting with Pastor and hearing his description of events. At both trials, Neaville said Pastor showed the officers a lump in his skin where he claimed to have been shot. At the second trial, in April 2014, Neaville testified, "He [Pastor] had a lump on his side. He was -- he had reached around and he was -- he was feeling with it and he was pushing on it and -- and a bullet came out. It appeared to be a .22 caliber bullet." On hearing this, one might think that Neaville was saying that he observed Pastor extracting the bullet from beneath his skin. In contrast, at the February 2014 trial, Neaville said that Pastor walked around, rubbing the area on his skin; although Pastor never left the officers' presence, he came back to them "with a lead bullet in his hand indicating that it came out of him." In other words, in the first trial, Neaville indicated that he did not actually watch Pastor pull the bullet from his flesh. As discussed above, at both trials, Pastor testified he found the bullet fragment on the floor; he did not pull it from his beneath his skin. Although Neaville's testimony at the first trial differed somewhat from his testimony at that second trial, we cannot say that if Tawater had a copy of the reporter's record from the first trial available to aid him in his cross-examination of Neaville regarding this discrepancy, there is a reasonable probability the result of the second trial would have been different.

In other words, the only discrepancy in the testimony between the two trials involved the spent bullet that penetrated Pastor's body. The rest of the witnesses who are not mentioned in this opinion were law enforcement officers who described the investigation that took place and

13

experts who testified about firearms and gunshot residue. Tawater has not shown (and we cannot imagine) how Tawater's possession of the reporter's record from the first trial could have been reasonably likely to change the outcome of the second trial.

Tawater has failed to meet the *Strickland* requirements; he has not shown his trial counsel rendered ineffective assistance of counsel. We overrule his second point of error.

We affirm the trial court's judgment and sentence.

Bailey C. Moseley
Justice

Date Submitted:     January 13, 2015
Date Decided:      February 4, 2015

Do Not Publish

14



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00095-CR
_____

ROYCE WILLIAM TAWATER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,311

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

In this appeal, Royce William Tawater challenges his conviction for deadly conduct. Tawater claims (1) error in the trial court's denial of his request for a reporter's record from an earlier trial and (2) that trial counsel was ineffective for failing to properly request such reporter's record.

Upon our review of the record and based on the reasoning and analysis in our opinion in cause number 06-14-00094-CR, issued on even date herewith, we overrule Tawater's points of error.

We affirm the trial court's judgment and sentence.

Ralph K. Burgess
Justice

Date Submitted:     January 13, 2015
Date Decided:       February 4, 2015

Do Not Publish

2